# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| ANTHONY KELLY,<br><br>*Plaintiff*,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION (INC.); and THE HERTZ CORPORATION,<br><br>*Defendants.* | CIVIL ACTION NO.<br>5:19-cv-00066-TES |

## ORDER GRANTING DEFENDANT WELLS FARGO'S MOTION TO DISMISS

After a Hertz associate told the Chattanooga Police Department that Plaintiff stole its rental car, Plaintiff Anthony Kelly spent 16 days in jail for allegedly bringing stolen property into the state of Georgia. Except, he didn't do it.

Apparently, the Hertz associate concluded that Plaintiff must have stolen the rental car because an unknown Wells Fargo representative told him that the name on the credit card Plaintiff gave as payment to Hertz did not match the name on the bank's records for that account. After more than two weeks in the Houston County Jail, Wells Fargo determined that Plaintiff was the rightful owner of the credit card. This jail time prompted Plaintiff to file this lawsuit against Defendants Wells Fargo Bank, N.A. and The Hertz Corporation, asserting claims for gross negligence, malicious prosecution,

punitive damages, and attorney's fees, [Doc. 1 at pp. 4–5], all of which Wells Fargo seeks to dismiss [Doc. 9].

## FACTUAL BACKGROUD

The Court takes the following recitation of facts from Plaintiff's Complaint, unless otherwise noted, and assumes them to be true for the purposes of ruling on Wells Fargo's Motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Although Plaintiff legally resides in Maryland, at the time of the events giving rise to this case, he lived and worked in Juneau, Alaska. [Doc. 1 at ¶¶ 1, 7]. On July 31, 2018, Plaintiff was on medical leave from his job, and he took a flight from Juneau, Alaska, to Chattanooga, Tennessee, where he rented a car from Hertz for travel back to his home state of Georgia to undergo physical therapy. [*Id.* at ¶¶ 7–8]. The rental car "was to be returned" one week later, on August 7, 2018, and as payment for the rental, Plaintiff used his Wells Fargo credit card. [*Id.* at ¶ 9]; *see also* [Doc. 1-1 at p. 4]. However, because Plaintiff "kept the rental car for just over five weeks," Hertz attempted to charge Plaintiff's credit card, but the transaction failed. [Doc. 1 at ¶¶ 9–10]; *see also* [Doc. 1-1 at p. 4]. With an unreturned rental car and an inability to charge its customer's credit card for the extended possession of the rental, Hertz "began investigating the issue" for fraudulent activity. [Doc. 1-1 at p. 4].

Following this failed charge attempt, Dale Kendle, a Hertz associate, successfully contacted Wells Fargo, the issuing bank for Plaintiff's credit card, who told him that the

owner of the credit card account did not match the name of Hertz's renter. [Doc. 1 at ¶ 11]. It was then Mr. Kendle reported both his inability to charge the credit card and Plaintiff's purported theft of the rental car to the Chattanooga Police Department. [*Id.* at ¶¶ 10–12]. However, despite Hertz's success in charging Plaintiff's credit card the very next day, he was arrested in Warner Robins, Georgia, for bringing stolen property into the state. [*Id.* at ¶¶ 10, 14–15]. Upon his arrival to the jail, Plaintiff was able to contact and explain the situation to a Wells Fargo representative who stated that it would take two weeks for Plaintiff to receive the bank's documentation to legitimize the charged credit card. [*Id.* at ¶¶ 15, 18]. After 16 days in jail, Hertz told an investigating officer, "they have confirmed with Wells Fargo that the account . . . used to obtain the vehicle was an account that *did* belong to [Plaintiff]," and the charges against him were dismissed. [*Id.* at ¶ 20–22 (emphasis in original)].

## DISCUSSION

### A. Standard of Review

Wells Fargo seeks to dismiss Plaintiff's claims against it for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Twombly*, 550 U.S. at 555 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

(2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333

(quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556. With the foregoing standard in mind, and taking the facts asserted in Plaintiff's Complaint as true, the Court rules on Wells Fargo's Motion to Dismiss.

**B.     Wells Fargo's Motion to Dismiss [Doc. 9]**

In the most general sense, Wells Fargo argues that Plaintiff insufficiently pled certain necessary elements to survive a dismissal and, as pled, his Complaint cannot raise a reasonable expectation that discovery will reveal evidence or some "set of circumstances" to implicate some liability on behalf of Wells Fargo. *Frederick v. Brown*, No. CV 113–176, 2015 WL 4756765, at *3 (S.D. Ga. Aug. 10, 2015). The Court addresses the specifics of each claim and argument in turn.

1.     Gross Negligence

"It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." *Goldstein, Garber, & Salama, LLC v. J.B.*, 797 S.E.2d 87, 89 (Ga. 2017). However, Plaintiff seeks to hold Wells Fargo liable for breaching the elevated duty of care for gross negligence. [Doc. 1 at ¶¶ 26–29]. Georgia law defines gross negligence as "the failure to exercise that degree of care that every [person] of common sense, however inattentive he [or she] may be, exercises under the same or similar circumstances; or lack of the diligence that even careless [people] are accustomed to exercise." *Heard v. City of Villa Rica*, 701 S.E.2d 915, 918–19 (Ga. Ct. App. 2010).

As to his claim for gross negligence, Plaintiff's Complaint states verbatim:

26.    Defendants had a *duty* not to provide false information to law enforcement authorities about their customers.
27.    Defendants *breached* that duty by providing law enforcement officers with false information about Mr. Kelly.

6

28. Defendants' breach of that duty *caused* Mr. Kelly to be arrested and spend 16 days in jail for a crime he did not commit.
29. Accordingly, Defendants are *liable* to Mr. Kelly for gross negligence.

[Doc. 1 at ¶¶ 26–29 (emphasis added)]. Thus, the crux of Plaintiff's gross negligence claim is that "*Defendants* had a duty not to provide false information to law enforcement authorities about their customers." [*Id.* at ¶ 26 (emphasis added)]. As shown from the Complaint, Plaintiff clearly lodges his gross negligence claim against both Defendants. *See, e.g.*, [Doc. 1 at p. 4 ("Count I: Gross Negligence (Both Defendants)")]. However, the only factual allegations in the Complaint that mention Wells Fargo at all are that a Wells Fargo employee told a Hertz associate that "the name on the credit card account did not match the name of the renter, Anthony Kelly." [*Id.* at ¶ 11]. Then, because the Wells Fargo employee told the Hertz associate that Wells Fargo "had since closed the account due to fraudulent use," the Hertz associate reported to law enforcement authorities that Plaintiff "had stolen the rental." [*Id.* at ¶ 12].

Wells Fargo contends that "Plaintiff, at no point in his Complaint, provides any facts or information regarding Wells Fargo's act of *actually providing false information to law enforcement authorities*." [Doc. 9-1 at p. 7 (emphasis added)]. This is true; no matter how the Complaint is read, there is no allegation whatsoever that Wells Fargo directly made a false report—or any report at all for that matter—to law enforcement authorities. Yet, in his Response, Plaintiff argues that "the Complaint states that Wells Fargo falsely

7

reported to law enforcement authorities, via Hertz, that Plaintiff was using a fake credit card." [Doc. 15 at p. 6].

Specific to this argument, Plaintiff now contends that "Wells Fargo had a duty not to provide false information to law enforcement authorities about [its] customers, . . . and breached that duty by providing law enforcement officers—*albeit via Hertz*—with false information about Plaintiff . . . ." [Doc. 15 at p. 6 (emphasis added)]. Essentially, Plaintiff makes two arguments in his Response brief: (1) that Wells Fargo disseminated false information to Hertz when it knew or should have known "that Hertz would forward such blasphemy to law enforcement authorities," and (2) that Wells Fargo's failure to verify the credit card account with its actual cardholder (Plaintiff) constitutes recklessly indifferent conduct that would cause injury. [*Id.* at p. 7]. To the extent Plaintiff attempts to, within these arguments, restructure his pleading to fashion a new claim under a vicarious-liability theory, these attempts are improper.

Under this theory, Plaintiff seemingly contends that *because* Wells Fargo made some representation—that the name on the credit card account and the name of the renter did not match—to the Hertz associate, and the Hertz associate subsequently reported that "[Plaintiff] had stolen the rental" to law enforcement authorities, Wells Fargo must be liable for gross negligence. However, there is no allegation of vicarious liability in the actual Complaint. Plaintiff argues that "[Wells Fargo] can be held liable for gross negligence if, 'with reckless indifference, [it] acted with actual or imputed knowledge

8

that the inevitable or probable consequence of [its] conduct would be to inflict injury.'" [*Id.* (quoting *Harris v. Reid*, 117 S.E. 256, 257 (Ga. Ct. App. 1923), *overruled on other grounds by Caskey v. Underwood*, 79 S.E.2d 558, 561–62 (Ga. Ct. App. 1953) ("[T]hose parts of *Harris v. Reid* . . . approving 'the entire absence of care' as a part of the definition of gross negligence, are expressly overruled.")). Here, Plaintiff contends that Wells Fargo acted with at least imputed knowledge that the inevitable or probable consequence of falsely reporting to Hertz that the name on the credit card account did not match the name Hertz was attempting to charge for the rental would lead to Plaintiff's subsequent arrest and incarceration and thereby, inflict injury. [Doc. 15 at p. 7].

Contrary to what Plaintiff argues in his brief, his Complaint, as drafted, does not identify any factual scenario where Wells Fargo breached the duty prescribed to it by Plaintiff. There is no assertion in the Complaint that Wells Fargo knew or should have known that what it told to the Hertz associate would be the basis for Hertz's brazen assertion to law enforcement authorities that Plaintiff stole its rental. The "duty," Plaintiff identified as breached by Wells Fargo in the Complaint, was a "duty not to provide false information to law enforcement authorities"—a narrow duty that Wells Fargo, under any reasonable interpretation of the Complaint, did not breach. [Doc. 1 at ¶ 26]. For the simple fact that Wells Fargo and Hertz are separate entities and act completely independent of each other, there can be no vicarious liability in this case under the duty described in the Complaint.

Additionally, what matters at the motion-to-dismiss stage is the Complaint itself, not the arguments embedded within the parties' briefs. The Court must only consider what is alleged in the Complaint, and based on that, the Complaint does not make any factual allegation that connects Wells Fargo to any alleged breach of the duty owed to Plaintiff. *See Blash v. City of Hawkinsville & Pulaski Cty. Sheriff's Office*, No. 5:17-cv-380, 2018 WL 3150346, at *11 (M.D. Ga. Jun. 26, 2018) (citing *Gibbons v. McBride*, 124 F. Supp. 3d. 1342, 1381 (S.D. Ga. 2015)); *see also Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir.2011) (holding that an argument raised for the first time in response to defendant's motion to dismiss, instead of in an amended complaint, was not properly raised before the district court). Even though the Complaint presents a sufficient legal conclusion that both "Defendants breached [their] duty," the remainder of Plaintiff's pleading is devoid of any factual support that Wells Fargo provided anything to law enforcement authorities. Without these supporting factual allegations, Plaintiff gross negligence claim fails under *Twombly* and its progeny. Thus, the Court must **DISMISS** Plaintiff's gross negligence claim against Wells Fargo **without prejudice**.

2. Malicious Prosecution

Next, the Court addresses Plaintiff's claim for malicious prosecution. Under Georgia law, malicious prosecution has six elements: "(1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has

10

caused damage to the plaintiff." *Barnette v. Coastal Hematology & Oncology P.C.*, 670 S.E.2d 217, 220 (Ga. Ct. App. 2008)); *aff'd* 599 F. App'x 378 (11th Cir. 2015); *see also Standard v. Falstad*, 779 S.E.2d 682, 685 (Ga. Ct. App. 2015) (quoting *McNeely v. Home Depot, Inc.*, 621 S.E.2d 473, 474–75 (Ga. Ct. App. 2005)).

The Georgia Court of Appeals, in *Standard*, stated that "[f]or purposes of [a malicious prosecution] claim, the prosecution must be 'carried on,' which requires 'an inquiry before a committing court.'" 779 S.E.2d. at 685 (quoting *Swift v. Witchard*, 29 S.E. 762, 764 (Ga. 1897)). "This means 'when instituted, the prosecution has been carried on so far as to bring the person charged before some officer, body[,] or authority invested by law with the power and duty of inquiring into the merits of the charge.'" *Id.* Of course, "[t]he suing out of a warrant, if done maliciously and without probable cause, wrongfully institutes a prosecution, but, without more, it is not sufficient to sustain a cause of action for a prosecution which was then maliciously 'carried on.'" *Id.* Stated differently, "[e]ven if the warrant issued, and the party was arrested, this, without more, would not be sufficient cause for such an action." *Id.*

Succinctly put, Plaintiff's Complaint does not allege that his "prosecution" was carried on so far as to bring him before a committing court to determine the merits of the alleged charges against him. Second, there is nothing in the record (either within the Complaint or filed contemporaneously with the Complaint) to show the existence of a formal charging document or warrant instigating criminal proceedings against Plaintiff.

11

Lastly, even though Plaintiff was undoubtedly arrested, the Complaint also clearly states that "[t]he charges against [Plaintiff] were dismissed," ergo there was no prosecution that terminated favorably in Plaintiff's favor. [Doc. 2 at ¶ 22]; *see also McNeely*, 621 S.E.2d at 474–75. Without more than an arrest and with the dismissal of some unofficial charges and his subsequent release—albeit 16 days later—Plaintiff cannot assert a claim for malicious prosecution against Wells Fargo. Accordingly, the Court must **DISMISS** that claim **without prejudice** as well.

        3.      <u>Punitive Damages Based on Gross Negligence and Attorney's Fees</u>

As for Plaintiff's claim for attorney's fees, "a federal court sitting in diversity should give effect to the forum state's rule regarding attorney's fees." *Am. Family Life Assurance Co. of Columbus v. United States Fire Co.*, 885 F.2d 826, 832 (11th Cir. 1989). Georgia law permits the "additional" award for punitive damages and attorney's fees only when actual or compensatory damages are awarded. *Hart v. Walker*, 820 S.E.2d 206, 209 (Ga. Ct. App. 2018); *see also* O.C.G.A. § 51-12-5.1(a).

Here, Plaintiff's punitive damages and attorney's fees claims are derivative of his other tort claims, and they cannot exist in the absence of those other claims. *See Fincher v. Monroe Cty. Bd. of Comm'rs*, No. 5:18-cv-00424-TES, 2019 WL 510448, at *8 (M.D. Ga. Feb. 8, 2019) (citing *Wright v. DISH Network, LLC*, 714 F. App'x 951, 955 (11th Cir. 2017); *see also D.G. Jenkins Homes, Inc. v. Wood*, 582 S.E.2d 478, 482 (Ga. Ct. App. 2003) ("The derivative claims of attorney['s] fees and punitive damages will not lie in the absence of a finding of

12

compensatory damages on an underlying claim."). Because Wells Fargo is not liable to Plaintiff for actual or compensatory damages for any of Plaintiff's claims, he is unable to recover punitive damages or attorney's fees against Wells Fargo. Accordingly, the Court **DISMISSES** Plaintiff's claims and prayers for punitive damages and attorney's fees **without prejudice**.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Wells Fargo's Motion to Dismiss [Doc. 9] and **DISMISSES** Plaintiff's claims for gross negligence, malicious prosecution, punitive damages, and attorney's fees asserted against it **without prejudice**.

**SO ORDERED**, this 23rd day of May, 2019.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
