IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANTHONY KELLY,<br><br>*Plaintiff*,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION (INC.); and THE HERTZ CORPORATION,<br><br>*Defendants*. | CIVIL ACTION NO.<br>5:19-cv-00066-TES |

**ORDER**

Before the Court is Wells Fargo Bank, N.A.'s ("Wells Fargo") motion for partial judgment on the pleadings,[1] asking the Court to dismiss the false imprisonment claim against it in Count III of Plaintiff's Amended Complaint. [Doc. 26].

Plaintiff spent 16 days in jail for allegedly bringing stolen property into the state of Georgia. But, Kelly was actually innocent. Accordingly, one of the claims he makes in this suit is for false imprisonment. Kelly contends that he was falsely imprisoned when an employee of Hertz Corporation ("Hertz") received some false information from a Wells Fargo representative about Plaintiff and then later relayed that false information

---

[1] As discussed below, Wells Fargo incorrectly filed its motion as a "Second Motion to Dismiss" pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* [Doc. 32]. However, the Court will construe the motion as a motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

to law enforcement. But, as discussed in greater detail below, Kelly's false imprisonment claim against Wells Fargo fails.

## BACKGROUND

The Court takes the following facts from Plaintiff's Amended Complaint [Doc. 26]. Unless otherwise noted, the Court assumes them to be true for ruling on Wells Fargo's Motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Although Plaintiff legally resides in Maryland, at the time of the events giving rise to this case, he lived and worked in Juneau, Alaska. [Doc. 26 at ¶¶ 1, 7]. On July 31, 2018, Plaintiff was on medical leave from his job, and he took a flight from Juneau, Alaska, to Chattanooga, Tennessee, where he rented a car from Hertz for travel back to his home state of Georgia to undergo physical therapy. [*Id.* at ¶¶ 7–8]. The rental car "was to be returned" one week later, on August 7, 2018, and as payment for the rental, Plaintiff used his Wells Fargo credit card. [*Id.* at ¶ 9]; [Doc. 26-1 at p. 4]. However, because Plaintiff kept the rental for several additional weeks, Hertz attempted to charge Plaintiff's credit card again but the transaction failed. [*Id.*]. With an unreturned rental car and an inability to charge its customer's credit card for the extended possession of the rental, Hertz "began investigating the issue" for fraudulent activity. [*Id.*].

Following this failed charge attempt, Dale Kendle, a Hertz associate, successfully contacted Wells Fargo, whose employee told him that the owner of the credit card account did not match the name of Hertz's renter. [Doc. 26 at ¶¶ 14—17]. Additionally,

the Wells Fargo representative told Kendle that Wells Fargo had since closed Kelly's account due to fraudulent use, that Kelly was committing identity theft by using an out-of-service credit card, and that Kendle should alert the authorities to Kelly's alleged crimes. [*Id.* at ¶ 21].

Kendle then reported Hertz's inability to charge the credit card and Plaintiff's purported theft of the rental car to the Chattanooga Police Department. [*Id.* at ¶ 13]. A Chattanooga police officer then contacted On-Star to turn on the rental car's GPS tracking device, and, later, an On-Star agent "advised [the Chattanooga officer] the vehicle was stationary at a hotel located in Warner Robins, Georgia[, and] that jurisdiction was contacted and in route to the vehicle." [Doc. 26-1, p. 4]. Despite Hertz's success in charging Plaintiff's credit card the very next day, Plaintiff was then arrested at the hotel for bringing stolen property into the state. [Doc. 26 at ¶¶ 28—30]. Upon his arrival at the jail, Plaintiff explained the situation to a Wells Fargo representative who told him that it would take two weeks for Plaintiff to receive the bank's documentation to legitimize the charged credit card. [*Id.* at ¶¶ 34—35]. After 16 days in jail, Hertz told an investigating officer, "they have confirmed with Wells Fargo that the account . . . used to obtain the vehicle was an account that *did* belong to [Plaintiff]," and the charges against him were dismissed. [*Id.* at ¶¶ 31, 37—38 (emphasis in original)].

On March 1, 2019, Plaintiff filed suit against Defendants Wells Fargo and Hertz, asserting claims for gross negligence, malicious prosecution, punitive damages, and

3

attorney's fees. [Doc. 1 at pp. 4–5]. On May 23, 2019, the Court granted Wells Fargo's motion to dismiss Plaintiff's claims against it. [Doc. 20]; *see* [Doc. 9]. On August 21, 2019, Plaintiff filed an Amended Complaint with the Court seeking to cure the deficiencies with Plaintiff's original complaint, this time asserting claims for negligence, gross negligence, false imprisonment, attorney's fees, and punitive damages against Wells Fargo and Hertz. [Doc. 26, pp. 6—12]. Wells Fargo now moves to dismiss Plaintiff's claim against it for false imprisonment. [Doc. 32].

## DISCUSSION

### A. Standard of Review

As noted, after filing an answer to the Amended Complaint, Wells Fargo filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 32-1, p. 1]. Plaintiff correctly points out that the motion to dismiss is improperly filed. [Doc. 33 at p. 8].[2] "Federal Rule of Civil Procedure 12(c) provides that [a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *IMX, Inc. v. E-Loan, Inc.*, 748 F.Supp.2d 1354, 1356 (S.D. Fla. 2010) (quoting Fed. R. Civ. P. 12(c)); *see United States v. Bahr*, 275 F.R.D. 339, 340 (M.D. Ala. 2011) ([a

---

[2] Plaintiff also argues—without citing to any statute or legal precedent—that "by consenting to the amendment of Plaintiff's Complaint, Wells Fargo waived any defense it may have had under Rule 12(b)(6)." [Doc. 33 at p. 8]. Wells Fargo contends that no authority supports Plaintiff's assertion that consenting to an amendment of a complaint effectively waives the right to oppose the subsequent amended complaint with a Rule 12(b)(6) motion. [Doc. 36 at p. 2]. The Court agrees with Wells Fargo that a defendant does not waive his right to file a Rule 12(b)(6) motion by consenting to an amendment. Rule 12(c) specifically states "a party *may* move for judgment on the pleadings[,]" and Plaintiff has identified no law that states Wells Fargo waived this right by consenting to an amendment of Plaintiff's Complaint.

4

Rule 12(b)(6)] motion must be made before filing a responsive pleading) (citing Fed. R. Civ. P. 12(b)(6)). Because "[t]he standard of review for Rule 12(b)(6) and Rule 12(c) motions are identical[,]" the Court will treat the motion as a Rule 12(c) motion for judgment on the pleadings. *ThunderWave, Inc. v. Carnival Corp.*, 954 F.Supp. 1562, 1564 (S.D. Fla. 1997); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) (explaining that standard under both Rule 12(b)(6) and 12(c) is "whether the count state[s] a claim for relief").

To avoid dismissal pursuant to Rule 12(b)(6), and a Rule 12(c) motion for judgment on the pleadings, a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.   Wells Fargo's Motion [Doc. 32]

Wells Fargo argues that Plaintiff insufficiently pled the necessary elements for a false imprisonment claim against it. "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." *Ferrell v. Mikula,* 672 S.E.2d 7, 10 (Ga. Ct. App. 2008) (citing O.C.G.A. § 51–7–20). Here, Plaintiff's false imprisonment claim against Wells Fargo is based on his arrest by officers acting on information originating from an employee of the bank.

> [Georgia] law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability for false imprisonment or malicious prosecution; in the latter case there is not . . . If the defendant . . . merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding; but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable.

*Kroger Co., Inc. v. Briggs*, 746 S.E.2d 879, 883 n.1 (Ga. Ct. App. 2013) (citing *Welton v. Ga. Power Co.*, 375 S.E.2d 108, 111 (Ga. Ct. App. 1988)) (emphasis added). Wells Fargo

6

correctly contends that "[f]atal to Plaintiff's claim of false arrest, the [Amended] Complaint is devoid of any factual allegations that Wells Fargo called, contacted, initiated, or instigated, at any point in time, any conversation with any agency for the purposes of arresting or prosecuting Plaintiff." [Doc. 32-1, p. 6]. This is true; no matter how the Amended Complaint is read, there is no allegation whatsoever that Wells Fargo directly made a false report—or any report at all for that matter—to law enforcement authorities. The Amended Complaint only alleges a Wells Fargo employee spoke with a Hertz employee.

Even if the Wells Fargo employee knew that their comments may have (or even would have) prompted Kendle to notify law enforcement, Plaintiff has not made factual allegations that Kendle's decision to notify law enforcement was somehow controlled by Wells Fargo. As best as can be determined by the pleadings and attached exhibit, Kendle—acting independently from Wells Fargo—contacted the Chattanooga Police Department, who then contacted On-Star, who then contacted the arresting officers in Warner Robins. While the arrest may have been predicated on information provided by Wells Fargo, Wells Fargo did not contact law enforcement or urge for Plaintiff's arrest. Further, Plaintiff has alleged nothing in his Amended Complaint that would suggest that the Wells Fargo representative did anything more than convey factual information they believed—perhaps, without performing the required due diligence—to be true to the Hertz employee. See [Doc. 26 at ¶¶ 18—21, 24, 27].

7

Plaintiff heavily relies on *Adams* to argue Wells Fargo indirectly urged the police to arrest Plaintiff through relaying information to Kendle. [Doc. 33 at pp. 9—10]. However, as previously noted by this Court, "*Adams* demonstrates that . . . Georgia law treats urging by a defendant as an element of a false imprisonment claim when the defendant did not actually detain the plaintiff" and the Plaintiff was instead detained by law enforcement. *Lewis v. Stewart,* NO. 5:18-cv-00110-TES, 2018 WL 6046832, at *5 (M.D. Ga 2018) (citing *Adams v. Carlisle*, 630 S.E.2d 529, 536 (Ga Ct. App. 2006); *see also Examination Mgmt. Servs. v. Sneed*, 794 S.E.2d 678, 683 (Ga. Ct. App. 2016) (affirming grant of summary judgment where a plaintiff did not offer evidence that defendant urged officers to arrest the plaintiff). As noted by Plaintiff, in *Adams*, the Court found "[a] jury could conclude . . . that [the store clerk's] comments went beyond merely relaying the facts to the officers and that her intent was to challenge or question any inclination that [the officer] may have had to believe [one of the woman's] explanation as to how she came to be in possession of the bills." *Adams*, 630 S.E.2d at 537. However, this case is easily distinguishable because the store clerk in *Adams* spoke directly with the arresting officer and made statements urging the officer to arrest another. In this case, Plaintiff's Amended Complaint does not allege that a representative or agent of Wells Fargo spoke with law enforcement. In fact, Wells Fargo spoke with Hertz, who then called the Chattanooga Police Department, who then called OnStar, who then contacted the Warner Robins (Ga) Police Department, the jurisdiction that ultimately

arrested Plaintiff. As shown above, Wells Fargo was "four levels" away from the arresting agency. Plaintiff has failed to cite to any Georgia case that would support a false imprisonment claim against an entity so tangentially related to the entity that actually arrested him.

For these reasons, Plaintiff fails to state a valid false imprisonment claim against Wells Fargo.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Wells Fargo's Motion [Doc. 32] and **DISMISSES** Plaintiff's claim for false imprisonment against it **without prejudice**.

**SO ORDERED**, this 28th day of April, 2020.

S/ Tilman E. Self, III  
**TILMAN E. SELF, III, JUDGE**  
**UNITED STATES DISTRICT COURT**
